OPINION AND JOURNAL ENTRY
On March 22, 1999, this Court affirmed Appellant's conviction following a jury trial on charges of complicity to commit aggravated burglary, complicity to commit aggravated robbery and complicity to commit kidnaping with accompanying firearm specifications. On direct appeal, Appellant argued through counsel that the evidence against him at trial was both insufficient and against the manifest weight to sustain conviction. As part of his original argument, Appellant claimed that the testimony of a co-conspirator, Brad Merrill, was unreliable, inconsistent and defective, basically attacking its credibility and the fact that it was uncorroborated.
On July 15, 1999, Appellant filed an Application for Reopening pro-se. Attached to this application are copies of two letters from an Assistant Public Defender (PD), one telling Appellant he would review the case and may decide to file an application to reopen on Appellant's behalf, but that Appellant must remain responsible for meeting all filing deadlines in case the PD decided against filing. In this letter, dated June 2, 1999, Appellant was advised to begin preparing his application immediately as the filing deadline was no later than June 21, 1999. The second letter, dated June 18, 1999, advised Appellant that the PD would not be filing an application as the Supreme Court had just ruled on a case containing the grounds the PD was intending to use within the application, and that the Court determined the issue unfavorably to Appellant's case. The PD advised Appellant to file his application late, if necessary, and advise the Court as to the reasons for late filing. In the PD's opinion, Appellant had valid reasons for filing beyond the deadline. The PD also advised Appellant that he saw no valid reason on record to request such a reopening. However, the PD advised Appellant that, if he chose to file his own application, he needed to attach an affidavit from the PD and Appellant as to the delay. Appellant did not file any affidavits.
After Appellant filed his application almost one month late, this Court waited in vain for a response from the state. No response in opposition was received. Thus, the Court undertook the lengthy and somewhat frustrating task of retrieving the record in this matter. The record was not returned to this Court until August of 2000.
Turning now from the procedural history of this matter, we must look to its merits. Rule 26(B) of the Rules of Appellate Procedure provide a means for an appellant to request that his or her appeal be reopened by a court. The rule provides that an applicant may file such an application based on a claim of ineffective assistance of counsel, but that it must be filed within ninety days of the filing of the original decision, unless an applicant shows "good cause" for filing late. Further, the application must contain assignments of error that were not originally addressed on the merits or were not completely addressed due to the deficiency of appellate counsel.
Importantly, the application must contain, "[a] sworn statement of the basis for the claim . . . and the manner in which the [appellate counsel's] deficiency prejudicially affected the outcome of the appeal. . . ." App.R. 26(B)(2)(d). The application will only be granted, ". . . if there is a genuine issue as to whether the applicant was deprived of effective assistance on appeal." App.R. 26(B)(5).
Unquestionably, Appellant was late in filing his motion. Just as unquestionably, the PD warned Appellant that it was his duty to see that the matter was timely filed, going so far as to caution Appellant that he needed to start preparing his application immediately early in June. While Appellant did receive notice only five days prior to deadline that the basis on which the PD might be willing to file an application on his behalf no longer existed, Appellant still had the benefit of several previous weeks to prepare his application. Further, the application itself is unsworn and is unsupported by any extrinsic affidavits. On these bases, the application must be denied.
Even though the application must be denied as untimely and uncompliant with the rules, the application fails on substantive grounds as well. Appellant lists seven reasons why his appellate counsel was deficient, in his view. These can be broadly characterized into three main complaints: 1) the prosecutor and trial judge referred to the O.J. Simpson trial in voir dire, which constituted some kind of misconduct, 2) the prosecutor somehow misled the jury as to the content of Appellant's videotaped statement played at trial and used the testimony of Brad Merrill, both of which constituted alleged misconduct, and 3) the jury process was tainted and mistrial should have been granted. We can only assume, since Appellant does not so state, that he claims his appellate counsel should have raised the above issues and thus, his actions or lack of action was deficient. Appellant is mistaken as to all of his claims.
As the PD pointed out, Appellant is required to show, when claiming ineffective assistance of counsel, that his appellate lawyer's behavior fell short of that required and that this deficiency prejudiced Appellant. Strickland v. Washington (1984), 466 U.S. 668, 687. Essentially, there is a "but for" test; but for counsel's errors, there is a reasonable probability that the outcome of the appeal, in this instance, would be different. Id. At 694. Appellant is wholly unable to meet this burden.
As to Appellant's arguments that the prosecutor somehow convinced the jury that Appellant had confessed to the crimes charged, either by use of Appellant's videotaped statements, use of the testimony of a police officer or through the testimony of Brad Merrill, Appellant never once connects these with some error on the part of either trial or appellate counsel. Appellant's argument is that these constituted prosecutorial misconduct, not his own counsel's. Nevertheless, these issues have been fully addressed once before to this Court. In his underlying appeal, these were raised as error by appellate counsel in a virtually identical fashion. Thus, these raise no new issues before this Court, point to no deficiency on the part of counsel and do not sustain Appellant's burden in his application.
As to his voir dire allegations, once again Appellant fails to connect how the prosecutor's comments or the judge's comments about a then-current media event can be any way connected to deficient performances on the part of his trial counsel or his appellate counsel. To the extent that he may be arguing that appellate counsel should have raised these as assignments of error on appeal, Appellant misstates the significance of these comments. These appear to be nothing more than innocuous references, mere passing remarks which may have been unnecessary, but were hardly prejudicial.
As to Appellant's vague and confusing references to some sort of bias on the part of the jury, he appears to be claiming that certain jurors should not have been seated and certain remarks by others not seated should not have been made in the hearing of all others. Once again, Appellant fails to sustain his burden. While certain of the jurors initially expressed an unwillingness to serve or admitted that they had been victims of crimes in the past, this is not evidence of their bias against Appellant. Appellant presents no specific instances of bias in his application. He merely presents to this Court his own feeling of unease with regard to certain jurors. A full review of the transcript of voir dire reveals no irregularities in the process and Appellant has directed the Court to no objectionable problems. Appellant's counsel on appeal could not, in good faith, have raised this as an issue. Thus, Appellant once again fails to meet even the first prong of the Strickland
test.
For all of the foregoing, Appellant's Application for Reopening must be overruled.
Waite, J., concurs, Vukovich, P.J., concurs, Donofrio, J., concurs.